# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5794 | **DATE** | 7/14/2004 |
| **CASE TITLE** | Pulphus vs. Sullivan, et. al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, Equicredit and Fairbanks' motion for summary judgment is denied as to Count III; and Equicredit and Fairbanks' motion for summary judgment is granted as to Count V. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 1 5 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | 105 |
| | Copy to judge/magistrate judge. | CLERK | | |
| MF | courtroom deputy's initials | 2004 JUL 14 AM 10:47 | JUL 1 5 2004 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MATILDA PULPHUS, BARBARA VANZANT, SYLVIA MANDERSON, and STEPHANIE BARNAS, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN J. SULLIVAN; NEW LOOK HOME SERVICES, INC.; ERIC GOLD; MDR MORTGAGE CORPORATION; ESTHER ALFARO-GILER; HERITAGE TITLE COMPANY; HARTFORD FINANCIAL SERVICES, INC.; CITIZENS BANK; BANK ONE; PROVIDENT BANK; EQUICREDIT CORPORATION OF AMERICA; and FAIRBANKS CAPITAL CORPORATION, <br><br> Defendants. | No: 02 C 5794 <br><br> Judge John W. Darrah <br><br><br> DOCKETED <br> JUL 1 5 2004 |

## MEMORANDUM OPINION AND ORDER

Several Plaintiffs, including Barbara Vanzant, filed suit against several Defendants, including EquiCredit Corporation of America ("EquiCredit") and Fairbanks Capital Corporation ("Fairbanks"). Vanzant alleges that she was unlawfully solicited to sign high-interest mortgages to finance poorly constructed home improvements. EquiCredit and Fairbanks move for summary judgment as to Counts III and V.

Vanzant alleges, in Count III, that EquiCredit and Fairbanks failed to comply with the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, by taking Vanzant's Truth in Lending Act Notice of Right to Cancel disclosure before her three-day rescission period ended. Vanzant

alleges, in Count V, that EquiCredit and Fairbanks engaged in common-law fraud by knowing, through its possession of loan documents, that Vanzant was fraudulently induced into two loan transactions. For the following reasons, EquiCredit and Fairbanks' motion for summary judgment is granted with respect to Count V, but EquiCredit and Fairbanks' motion is denied with respect to Count III.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable

to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts, for the purposes of this motion, taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def's 56.1") and exhibits, are as follows.

Vanzant owns and lives at a home on the west side of Chicago. Def.'s 56.1 ¶ 1. John Sullivan and New Look Home Services, Inc. ("New Look") proposed to remodel Vanzant's home. Def.'s 56.1 ¶ 10. Sullivan stated that he could arrange financing for the remodeling and further stated that a person in New Look's finance department would handle the financing. Pl.'s 56.1 ¶ 6.

In January 2001, Sullivan called Vanzant and told her someone would pick her up and take her to complete the paperwork for the loan. Pl.'s 56.1 ¶ 7. A man who worked for either New Look or Sullivan drove Vanzant to complete the loan. Pl.'s 56.1 ¶ 7. Vanzant signed documents that created a mortgage transaction between Vanzant and Hartford Financial Services, Inc. ("Hartford"). Def.'s 56.1 ¶ 12. One of the documents Vanzant signed and received was the three-day Notice of Right to Cancel required by the Truth in Lending Act, pursuant to 15 U.S.C. § 1635. Def.'s 56.1 ¶ 13. Vanzant was unaware this was called the closing, and she did not understand the significance of the mortgage transaction. Pl.'s 56.1 ¶ 7.

Vanzant also signed two other Truth in Lending Act Disclosure Statements in connection with her January 2001 loan. The first statement indicated Vanzant signed the statement on January 9, 2001. Pl.'s App., Pl.'s Ex. F. The second statement indicated Vanzant signed the statement on January 12, 2001. Pl.'s App., Pl.'s Ex. E.

Two days after the closing, Sullivan came to Vanzant's house and asked her for all of the documents she had received at the closing, including the Notice of Right to Cancel. Def.'s 56.1 ¶ 14. Vanzant gave him the requested documents. Def.'s 56.1 ¶ 14. Plaintiff did not attempt to exercise her right to rescind the January 2001 loan. Def.'s 56.1 ¶ 15. Thereafter, Hartford assigned this mortgage and promissory note to EquiCredit. Def.'s 56.1 ¶ 18.

Sullivan then proposed that Vanzant obtain another loan so that she could finance additional improvements. Def.'s 56.1 ¶ 21. In March 2001, Sullivan called Vanzant and told her someone would pick her up and take her to complete the paperwork for the loan. Pl.'s 56.1 ¶ 22. The same man who drove Vanzant earlier, for the January 2001 loan, once again drove Vanzant to complete the loan. Pl.'s 56.1 ¶ 22. Vanzant signed documents that created a second mortgage transaction between Vanzant and Hartford. Def.'s 56.1 ¶ 23. Vanzant was unaware this was called the closing, and she did not understand the significance of the mortgage transaction. Pl.'s 56.1 ¶ 22. Vanzant also signed two Truth in Lending Act Disclosure Statements in connection with her March 2001 loan. The first statement indicated Vanzant signed the statement on March 15, 2001. Pl.'s App., Pl.'s Ex. I. The second statement indicated Vanzant signed the statement on March 27, 2001. Pl.'s App., Pl.'s Ex. J.

Hartford never represented that Sullivan and New Look were its agents. Def.'s 56.1 ¶ 29. Sullivan never represented to Vanzant that he worked for anyone other than New Look.

Def.'s 56.1 ¶ 30. Moreover, no misrepresentations are apparent on the face of either of Vanzant's promissory notes and mortgages, which were later assigned to EquiCredit. Def.'s 56.1 ¶¶ 19, 26. Neither EquiCredit nor Fairbanks ever engaged in any communications with Vanzant in order to induce her to enter into either of the loans. Def.'s 56.1 ¶ 27.

Thereafter, Hartford assigned the second mortgage and promissory note to EquiCredit. Def.'s 56.1 ¶ 25. Fairbanks later became the servicer of this second loan. Def.'s 56.1 ¶ 7.

## ANALYSIS

### *Count III*

Vanzant seeks rescission in Count III based upon the alleged unlawful taking of her Notice of Right to Cancel disclosure. EquiCredit and Fairbanks contend that they are not liable under the Truth in Lending Act because Vanzant voluntarily surrendered her loan documents to Sullivan, and Sullivan did not act as EquiCredit's and Fairbanks' agent.

The Truth in Lending Act provides that the originating lender must clearly and conspicuously provide to the borrower in writing notice that there is a right to rescind the lending transaction within either (1) three days of the closing of the transaction or (2) the delivery of the information and rescission forms, whichever is later. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(3). This writing is otherwise known as the Notice of Right to Cancel. If a lender fails to provide this disclosure, the right to rescind extends for three years after the transaction occurs. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3); *Fairbanks Capital Corp. v. Jenkins*, 225 F. Supp. 2d 910, 913 (N.D. Ill. 2002). The right to rescission also applies to an assignee of a loan. 15 U.S.C. § 1641(c).

The lender may also be subject to actual and statutory damages for failure to provide the Notice of Right to Cancel. 15 U.S.C. § 1640(a). However, an assignee of a loan is not subject to actual and statutory damages unless the required disclosure statements are invalid on their face.

EquiCredit and Fairbanks first contend that they are not liable under the Truth in Lending Act because Vanzant voluntarily surrendered her Notice of Right to Cancel to Sullivan. However, Sullivan asked Vanzant to return her Notice of Right to Cancel, and Vanzant gave Sullivan the document. Although a lender which obtains a Notice of Right to Cancel after the rescission period ends does not violate the Truth in Lending Act, *In re Rhoades*, 80 B.R. 938, 943 (Bankr. C.D. Ill. 1987), a lender which asks for and obtains the Notice of Right to Cancel from a borrower before the rescission period ended would violate the purpose of § 1635 and prevent the borrower from having a reasonable opportunity to rescind the loan. It is a genuine issue of material fact as to whether Sullivan asked and obtained Vanzant's Notice of Right to Cancel after the rescission period ended. Accordingly, EquiCredit and Fairbanks' motion for summary judgment on this ground is denied.

EquiCredit and Fairbanks further contend that they cannot be held liable for Sullivan's actions because he did not act as their agent. While it is undisputed that Hartford never specifically represented that Sullivan and New Look were its agents and Sullivan never specifically said to Vanzant that he worked for anyone other than New Look, it may have appeared to Vanzant that Sullivan or New Look was Hartford's agent. *See Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) (stating test for apparent agency). Sullivan and New Look proposed that Vanzant remodel her home; Sullivan stated that he could

arrange financing for the remodeling; and Sullivan called Vanzant and had someone pick her up to complete the paperwork for the loan.

Under these facts, it could have reasonably appeared to Vanzant that Sullivan or New Look worked on behalf of Hartford, the original lender of the loan. If Sullivan or New Look are found to be agents of Hartford, the right to rescission could still apply against assignees of the loan. Therefore, a genuine issue of material fact exists as to whether Sullivan or New Look were agents of Hartford; and EquiCredit and Fairbanks' motion for summary judgment on this ground is denied.

## Count V

In response to Vanzant's claim for common law fraud against EquiCredit and Fairbanks, EquiCredit and Fairbanks argue that they complied with the assignee provisions of the Truth in Lending Act and are therefore shielded from liability. An assignee cannot be liable for Illinois state law claims premised on alleged Truth in Lending Act violations unless: (1) an assignee violates the assignee liability provisions of the Truth in Lending Act or (2) the assignee participated in "active and direct" fraud before the assignment of the contract. *Jackson v. S. Holland Dodge, Inc.*, 755 N.E.2d 462, 469-71 (Ill. 2001) (*Jackson*); *accord Marshall v. Webb*, No. 01 C 3619, 2002 WL 1628448, at *1 (N.D. Ill. Mar. 11, 2002). An assignee is liable under the Truth in Lending Act only if a violation is apparent on the face of the disclosure statement. 15 U.S.C. § 1641(a). "A violation apparent on the face of the disclosure statement includes but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure statement which does not use the terms required to be used by this subchapter." 15 U.S.C. § 1641(a).

Vanzant initially argues, in paragraphs 15 and 25 of her statement of facts, that she simultaneously signed and received two contradictory Truth in Lending Act disclosures at each loan closing. The simultaneous receipt of two contradictory disclosure statements is a violation of the Truth in Lending Act. *Pulphus v. Sullivan*, No. 02 C 5794, 2003 U.S. Dist. LEXIS 7080, at *37-39 (N.D. Ill. Apr. 28, 2003). Vanzant asserts that at the first closing, she received multiple, contradictory disclosure statements. These disclosure statements show that they were signed on different dates. Vanzant further contends that either her signature or the dates were forged on these disclosure statements. Vanzant also argues the same practice occurred with the disclosure statements she received at the second closing.

However, EquiCredit and Fairbanks would not be able to discover from the face of the disclosure statements if Vanzant's signature or the date were forged on the disclosure statements. Furthermore, it is undisputed that no misrepresentations are apparent from the face of Vanzant's promissory notes and mortgages which were assigned to EquiCredit and later serviced by Fairbanks. Therefore, no genuine issue of material fact exists as to whether EquiCredit and Fairbanks fulfilled their duties under the Truth in Lending Act.

Vanzant next contends that "the evidence adduced by [Vanzant] clearly supports an inference that EquiCredit participated, accepted, and approved the misconduct." Pl.'s Resp. at 7. She argues the fraud claims are not based on a Truth in Lending Act disclosure, and the assignee protection provision thus does not apply. Instead, Vanzant states EquiCredit knowingly accepted the fruits of the fraud and willfully ignored information that would have demonstrated Vanzant's loans were fraudulently procured.

However, the Illinois Supreme Court stated that:

> As we noted in *Lanier*, there is a consistent policy through Illinois law against extending disclosure requirements beyond what is mandated by federal law. If an assignee were liable under the Consumer Fraud Act, though exempt from the liability under [the Truth in Lending Act], it would impose disclosure requirements on assignees beyond those mandated by federal law. . . . Thus, we conclude that an assignee is not responsible for the misrepresentations made by the dealer to the consumer outside of reviewing the face of the assigned document for apparent defects.

*Jackson*, 755 N.E.2d at 469 (internal citations omitted).

The Illinois Supreme Court, though, recognized that a plaintiff could bring a state law claim for preassignment fraud that was "active and direct." *Jackson*, 755 N.E.2d at 470. This type of fraud would be separate from the Truth-in Lending Act assignee exemption. *Jackson*, 755 N.E.2d at 470. "For example, if a plaintiff could allege specific facts showing that the assignee met with the car dealer and concocted a scheme to put false statements on the financing statement, an assignee would not be exempt from a state fraud action from a duped buyer." *Jackson*, 755 N.E.2d at 470-71.

Here, Vanzant claims EquiCredit and Fairbanks chose to accept the assignment of her loans although EquiCredit and Fairbanks should have recognized the loans were fraudulently obtained. According to Vanzant, EquiCredit has policies and procedures to review loan files before accepting an assignment of a loan; but EquiCredit excused certain requirements, knew Hartford violated industry standards, and ignored critical documents, other than the Truth in Lending Act disclosures, in the loan files. However, it is undisputed that neither EquiCredit nor Fairbanks ever engaged in any communication with Vanzant in order to induce her to enter into either loan. Moreover, upon the assignment of a loan, EquiCredit and Fairbanks have no duty

under the law regarding these requirements, industry standards, and critical documents. Holding EquiCredit and Fairbanks liable for fraud in this situation would "impose disclosure requirements on assignees beyond those mandated by federal law." *Jackson*, 755 N.E.2d at 469.

Vanzant further contends that EquiCredit and Fairbanks participated in the fraud. Vanzant asserts that there was a close relationship between EquiCredit and Hartford because of the high volume of dealings completed between these two parties. However, Vanzant has not produced any affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate that EquiCredit and Hartford "concocted a scheme" to defraud Vanzant. Vanzant has also failed to produce any affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate that Fairbanks was involved in a scheme to defraud Vanzant. Therefore, no genuine issue of material fact exists as to whether EquiCredit and Fairbanks actively and directly participated in a preassignment fraud of Vanzant.

Lastly, Vanzant argues that EquiCredit is not a holder in due course of the loans and is, thus, liable for all borrower claims against the originating lender. However, the holder in due course rule operates only as a limitation upon a creditor's "right to enforce the obligation of a party to pay an instrument." 810 ILCS 5/3-305(a). Thus, while the holder in due course rule may affect EquiCredit's ability to enforce Vanzant's obligation, it does not create a basis for her to sue for damages.

## CONCLUSION

For the foregoing reasons, EquiCredit and Fairbanks' Motion for Summary Judgment is denied as to Count III; and EquiCredit and Fairbanks' Motion for Summary Judgment is granted as to Count V.

Dated: 7-14-04

JOHN W. DARRAH
United States District Judge